UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

MICHAEL PARKER,

                                       Plaintiff,                **No. 15-cv-2057 (RA)**

    -against-

THE CITY OF NEW YORK, a municipal entity; and         **AMENDED COMPLAINT**
New York City Police Officer JOSE RIVERA
(Shield 26191) and Sergeant EDWIN REYES (Shield         **JURY TRIAL**
01641), in their individual capacities,

                                        Defendants.

------------------------------------------------------------------ X

       Plaintiff MICHAEL PARKER, by his attorneys, Beldock Levine & Hoffman LLP, as and for his amended complaint against the defendants alleges as follows:

**PRELIMINARY STATEMENT**

       1.      In this civil rights action, brought under 42 U.S.C. § 1983, Plaintiff seeks redress for injuries caused by the unconstitutional conduct of Defendants New York City Police Officer JOSE RIVERA (Shield 26191) and Sergeant EDWIN REYES (Shield 01641) in falsely arresting and maliciously prosecuting him, as well as the injuries he suffered as a result of the policies, practices, and/or customs of Defendant THE CITY OF NEW YORK that led to the improper destruction of video evidence, which prolonged Plaintiff's wrongful prosecution.

       2.      Without any suspicion that Plaintiff was engaged in illegal activity, the defendant officers stopped and frisked him in the lobby of a New York City Housing Authority ("NYCHA") building. Then, without founded suspicion that Plaintiff was engaged in criminal conduct, the officers demanded to know why he was in the building. Even though Plaintiff told them that he

was visiting a friend in the building, the officers arrested Plaintiff and falsely charged him with criminal trespass offenses. The charges were all eventually dismissed, but not until July 2013, which required Plaintiff to make numerous court appearances.

3.      The events of Plaintiff's arrest were captured on a video surveillance system maintained by the New York City Police Department ("NYPD") in certain NYCHA buildings. Within four days of Plaintiff's arrest, his defense counsel filed a motion in court for a subpoena to have the NYPD produce the video and served a copy of the motion on the NYPD. While the motion was pending, the NYPD destroyed the video pursuant to policies, practices, customs, and/or the deliberate indifference of the NYPD, for which Defendant the City of New York is responsible. The destruction of the video evidence prolonged Plaintiff's wrongful prosecution and caused him further constitutional injuries.

## JURISDICTION

4.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4), as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

5.      Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), as this is the judicial district in which the events giving rise to Plaintiff's claims took place.

## JURY DEMAND

6.      Plaintiff demands a trial by jury in this action on each and every one of his claims for which jury trial is legally available.

## THE PARTIES

7. Plaintiff MICHAEL PARKER is a citizen of the United States and the State of New York, and was at all times relevant to this complaint a resident of Bronx County, City and State of New York.

8. Defendant THE CITY OF NEW YORK ("the City") is a municipal entity created and authorized under the laws of the State of New York.

9. The City is authorized by law to maintain a public housing authority and does maintain the New York City Housing Authority ("NYCHA"). NYCHA owns and operates housing for low-income residents in all five boroughs of New York City. NYCHA is responsible for the creation and implementation of policing and security policies in buildings owned by NYCHA.

10. The City is authorized by law to maintain a police department, and does maintain the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

11. Defendant JOSE RIVERA (Shield 26191) is a NYPD Police Officer who unlawfully detained, frisked, and arrested Plaintiff in a NYCHA building without suspicion of any illegal activity and lodged false criminal charges against him.

12. Defendant EDWIN REYES (Shield 01641) is an NYPD Sergeant who participated in and/or failed to intervene to stop the unlawful detention, frisk, arrest and prosecution of Plaintiff.

13. At all times relevant herein, defendants RIVERA and REYES acted under color of state law in the course and scope of their duties and/or functions as agents, employees, and/or

3

officers of the City and/or the NYPD, and incidental to the lawful pursuit of their duties as agents, employees, and/or officers of the City and/or the NYPD.

14. At all times relevant herein, defendants RIVERA and REYES violated clearly established rights and standards under the Fourth and Fourteenth Amendments to the United States Constitution, of which a reasonable police officer in his circumstances would have known.

## STATEMENT OF FACTS

15. 2400 Second Avenue is a residential apartment building located in Manhattan known as the Wagner Houses.

16. Upon information and belief, it is owned and operated by NYCHA.

17. Upon information and belief, the NYPD provides security at the Wagner Houses.

18. Upon information and belief, the Wagner Houses are equipped with a video surveillance system known as VIPER (Video-Interactive, Patrol, Enhanced, Response) to monitor and record activities that occur on the premises.

19. Upon information and belief, the NYPD maintains VIPER video cameras and the recordings captured on these cameras.

20. At all relevant times herein, Ted Smith was a resident of the Wagner houses.

21. On or about January 19, 2013, Plaintiff and Kevin Stewart went to visit Mr. Smith in his apartment at the Wagner Houses.

22. After Plaintiff and Mr. Stewart entered the Wagner Houses, they took the elevator to the eleventh floor where Mr. Smith lived.

23. Plaintiff and Mr. Stewart knocked on the door of Mr. Smith's apartment and discovered that Mr. Smith was not home.

24. Plaintiff and Mr. Stewart took the elevator down to the lobby in order to leave the building.

25. As Plaintiff and Mr. Stewart were walking through the lobby to leave the building, two NYPD police officers—who, upon information and belief were NYPD Police Officer JOSE RIVERA (Shield 26191) and NYPD Sergeant EDWIN REYES (Shield 01641)—approached them.

26. The officers grabbed Plaintiff and Mr. Stewart, put them against the wall, and frisked them immediately.

27. Plaintiff asked the officers why he was being stopped, and was told, in sum and substance, "we'll find out."

28. Officer RIVERA and Sergeant REYES asked Plaintiff and Mr. Stewart where they were coming from.

29. They told the officers that they were coming from Mr. Smith's apartment.

30. Plaintiff gave the officers Mr. Smith's name and apartment number.

31. The officers did not seek to verify this information.

32. Plaintiff offered to call Mr. Smith to confirm his residence and that he had invited Plaintiff to visit him.

33. The officers told Plaintiff, in sum and substance, to "shut the fuck up."

34. Officer RIVERA and Sergeant REYES handcuffed Plaintiff and Mr. Stewart and took them to a police car.

35. Upon information and belief, Plaintiff and Mr. Stewart's arrest took place in an area of the Wagner Houses monitored by VIPER surveillance cameras.

36. Upon information and belief, Plaintiff and Mr. Stewart were taken to Police Service Area 5.

37. Plaintiff was charged with one count of Criminal Trespass in the Second Degree in violation of Penal Law § 140.15(1); two counts of Criminal Trespass in the Third Degree in violation of Penal Law § 140.10(a), (c); and one count of Trespass in violation of Penal Law § 140.05.

38. Police Officer RIVERA falsely swore in the criminal complaint filed against Plaintiff in court that Plaintiff and Mr. Stewart "were not able to tell me the identity or an apartment number of a building resident of whom the defendant was [sic] an invited guest."

39. Plaintiff was held in custody until the afternoon of January 20, 2013 when he was arraigned.

40. Plaintiff was scheduled to work on January 20, 2013.

41. As a result of his arrest Plaintiff missed his shift and was terminated from his job.

42. On January 24, 2013, Plaintiff's criminal defense attorney filed a Notice of Motion for a Subpoena Duces Tecum in New York County Criminal Court.

43. The purpose of the requested subpoena was to require the NYPD to produce the VIPER video footage documenting Plaintiff's arrest.

44. On the same day, Plaintiff's criminal defense attorney served a copy of the motion and supporting papers on the NYPD Legal Matters Department at 1 Police Plaza.

45. The motion was returnable on January 25, 2013, but no one from the NYPD appeared to contest the motion, nor did the NYPD submit any papers or response opposing the motion.

46.     On January 28, 2013, New York County Criminal Court, Hon. Kevin B. McGrath, Jr., signed the subpoena requiring the NYPD to produce the requested video footage.

47.     The following day, counsel served the subpoena on the NYPD Legal Matters Department at 1 Police Plaza.

48.     On January 30, 2013, the NYPD Legal Bureau, Document Production Unit, sent a memo to the Commanding Officer of Police Service Area 5 ordering the video footage be produced.

49.     The NYPD did not respond to the judicially-ordered subpoena until May 16, 2013.

50.     At that time, the NYPD sent Plaintiff's defense attorney a statement that there were "negative results for the surveillance video recordings you requested."

51.     The statement from the NYPD to Plaintiff's defense attorney also said, "Please note the requested videos are saved for 7 to 8 days in this system. Notice to preserve these videos was [sic] not received in this time frame."

52.     The NYPD maintains a Patrol Guide of its written policies and practices.

53.     Patrol Guide Procedure Number 211-15, entitled "Processing Subpoenas for Police Department Records and for Testimony by Members of the Service" sets forth the official NYPD policy for responding to subpoenas to produce VIPER video and other material.

54.     Patrol Guide Procedure Number 211-15 states that if the NYPD receives a subpoena that is not "so-ordered" the procedure is to note that the subpoena was received, file the request, and contact the attorney, if possible, to alert the attorney that the NYPD will not comply with a subpoena unless it is "so-ordered" by a judge.  The procedure then instructs officers that "[n]o further action is required."

55.     On or about July 18, 2013, all charges against Plaintiff were dismissed, upon information and belief, on the motion of the District Attorney.

56.     Plaintiff was forced to appear in court on or about six occasions to fight the charges between January and July 2013.

57.     As a result of the foregoing acts, Plaintiff suffered loss of liberty, loss of income, emotional and psychological pain, embarrassment, humiliation, and harm to his reputation.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 – Violations of Plaintiff's Fourth and Fourteenth Amendment Rights by Individual Defendants**

58.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

59.     In committing the acts and omissions complained of herein, defendants RIVERA and REYES acted under color of state law to deprive Plaintiff of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, including, but not limited to:

   a. the right to be free from unreasonable search and seizure;

   b. the right to be free from arrest without probable cause;

   c. the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion, or legal justification, and of which detention Plaintiff was aware and to which he did not consent;

   d. the right to be free from the lodging of false criminal charges by police officers;

   e. the right to be free from malicious prosecution by police officers, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in Plaintiff's favor; and

   f. the right to be free from deprivation of liberty without due process of law.

60. In committing the acts and omissions complained of herein, defendants RIVERA and REYES breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.

61. As a direct and proximate result of defendants RIVERA and REYES's deprivation of Plaintiff's constitutional rights, Plaintiff suffered the injuries and damages set forth above.

62. The unlawful conduct of defendants RIVERA and REYES was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 – New York City's Municipal Liability for Unlawful**
**Trespass Enforcement Policies and Practices in NYCHA Buildings**

63. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

64. The unconstitutional conduct of defendants RIVERA and REYES was directly and proximately caused by policies, practices, and/or customs devised, implemented, enforced, encouraged, and/or sanctioned by the City.

65. At all times relevant herein, NYCHA has outsourced its security obligations to the NYPD as part of a contractual agreement. Part of this agreement provides that the NYPD and its officers act as NYCHA's agents in NYCHA buildings and have the authority to enter all NYCHA buildings, question people they encounter, and act as a complainant on NYCHA's behalf in criminal trespass cases arising on NYCHA property.

66. As part of carrying out these security obligations in and around NYCHA buildings, the NYPD has maintained unlawful trespass enforcement policies and practices.

67. These policies and practices constitute a custom and practice wherein officers stop and question persons inside NYCHA buildings without sufficient legal basis or reasonable suspicion, and unlawfully arrest individuals for trespass inside NYCHA buildings without probable cause.

68. These policies and practices result from inadequate training of NYPD officers, improper written policies and training protocols of the NYPD and NYCHA, insufficient supervision of NYPD officers, and a failure to discipline officers who have conducted unlawful stops and/or arrests as part of their duties in policing NYCHA buildings.

69. These policies and practices have led to large numbers of NYCHA residents and their invited guests being subjected to unlawful stops, frisks, and/or arrests for trespass.

70. As Plaintiff's experience demonstrates, the NYPD's unlawful trespass enforcement policies and practices have caused law-abiding individuals, including the Plaintiff, to be arrested for trying to lawfully visit a NYCHA resident.

71. The City has been aware, at least since 2007, that the NYPD's trespass enforcement policies and practice are unlawful.

72. At all relevant times, the City, acting through the NYPD and the individual defendants, has implemented, enforced, encouraged, and/or sanctioned a policy, practice, and/or custom of stopping and frisking people inside of NYCHA buildings without the reasonable articulable suspicion of criminality required by the Fourth Amendment, and has displayed deliberate indifference toward a widespread practice of unconstitutional stops and frisks by the NYPD inside of NYCHA buildings.

73. At all relevant times, the City, acting through the NYPD and the individual defendants, has implemented, enforced, encouraged, and/or sanctioned a policy, practice, and/or

custom of making unconstitutional arrests for trespass inside NYCHA buildings without the requisite probable cause mandated by the Fourth Amendment.

74. At all relevant times, the City, has displayed deliberate indifference toward a widespread practice of unconstitutional arrests by the NYPD for trespass inside of NYCHA buildings.

75. The individual defendants' unconstitutional conduct alleged herein was directly and proximately caused by policies, practices, and/or customs devised, implemented, enforced, encouraged and/or sanctioned by the City including: (a) the failure to adequately and properly screen, train, and supervise NYPD officers; (b) the failure to properly and adequately monitor and discipline NYPD officers; and (c) the covert and tacit encouragement and sanctioning of, and the failure to rectify, the NYPD's practices of conducting suspicionless stops and frisks and making trespass arrests absent probable cause inside of NYCHA buildings.

76. By displaying deliberate indifference toward a widespread practice of unconstitutional stops and frisks and trespass arrests inside of NYCHA buildings, the City caused the Plaintiff to be subjected to the violations of his constitutional rights alleged herein.

77. As a result of the foregoing, Plaintiff suffered the injuries and damages alleged herein.

**THIRD CAUSE OF ACTION**
**42 U.S.C. § 1983 – New York City's Municipal Liability for**
**Destruction of Relevant Video Evidence**

78. Plaintiff realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

79. At all times relevant herein, the City, acting through the NYPD and the individual defendants, has implemented, enforced, encouraged, and/or sanctioned policies, practices, and/or customs of destroying and/or failing to preserve video evidence recorded by the NYPD's VIPER video surveillance system that is relevant to ongoing criminal cases.

80. These policies, practices, and/or customs result from the NYPD's failure to adequately instruct, train, and/or supervise its officers in how and when to preserve and not destroy relevant video evidence.

81. These policies, practices, and/or customs include, *inter alia*:

    a. Instructing officers to destroy VIPER surveillance video after only 7 or 8 days;

    b. Failing to properly instruct, train, and/or supervise officers that upon receipt of notice to preserve video for a pending criminal prosecution – whether by service of a notice of a motion for a judicially ordered subpoena or otherwise – the requested video must be preserved; and

    c. Failing to properly instruct, train, and/or supervise officers on when and how to preserve video evidence that has been requested with regard to a pending criminal prosecution.

82. Pursuant to the NYPD's foregoing policies, practices, and/or customs, the NYPD destroyed video evidence of Plaintiff's arrest pursuant to its policy to destroy VIPER video within "7 to 8 days" and in deliberate disregard of Plaintiff's defense attorney's timely filing of a Notice of Motion for a Subpoena Duces Tecum and service of the motion on the NYPD within five days of Plaintiff's arrest and four days of Plaintiff's arraignment.

83. It is obvious that a defendant or his attorney will hardly ever be able to obtain a judicially ordered subpoena within 7 to 8 days of the defendant's arrest.

84. The NYPD has shown deliberate indifference to its constitutional obligation to preserve and a criminal defendants' constitutional right to obtain video maintained by the government that is relevant to the person's criminal prosecution.

85. The NYPD's foregoing polices, practices, and/or customs caused the destruction of video evidence that would have shown the individual defendants unlawfully stopping, frisking, and arresting Plaintiff. Had this video not been destroyed and produced to Plaintiff as judicially ordered, the false criminal charges against Plaintiff would have been dismissed sooner and he would not have been subjected to the prolonged violation of his constitutional rights for more than seven months.

86. As a result of the foregoing, Plaintiff suffered the injuries and damages alleged herein.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff demands the following relief against the defendants, jointly and severally:

(a) compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b) punitive damages from defendants RIVERA and REYES to the extent allowable by law;

(c) attorneys fees;

(d) the costs and disbursements of this action;

(e) interest; and

(f) such other and further relief as this Court deems just and proper.

Dated: New York, New York
      July 20, 2015

                                                BELDOCK LEVINE & HOFFMAN LLP
                                                99 Park Avenue, PH Suite
                                                New York, New York 10016
                                                (212) 490-0400

_____
Joshua S. Moskovitz
Jonathan C. Moore
Keith M. Szczepanski

*Attorneys for Plaintiff Michael Parker*

14